UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA, ex rel.
[UNDER SEAL].

Plaintiffs,

and

[UNDER SEAL],

Defendant.

Civ. No. ________

SEALED FILE 02.522 ADM/SRN

**FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT**

JURY TRIAL DEMAND

[FILED IN CAMERA AND UNDER SEAL]

SCANNED
MAY 26 2005
U.S. DISTRICT COURT MPLS

APR 2 2005
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK



UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,
ex rel. Christine Long,

Plaintiffs,

-vs-

Mayo Foundation,

Defendants.

Civil No. ________
SEALED FILE 02.522. ADM/SRN

**FIRST AMENDED COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT**

JURY TRIAL DEMAND
[FILED IN CAMERA AND UNDER SEAL]

---

*Qui Tam* Plaintiff Christine Long, by and through her attorneys, brings this complaint on behalf of the United States pursuant to 31 U.S.C. § 3730 and on her own behalf, as follows:

I.

1. This is an action for civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729 *et seq.* This Court has subject matter jurisdiction pursuant to 31 U.S.D. § 3730(a). This Court has personal jurisdiction over the defendant because the defendant transacts business in this district and the acts complained of which are proscribed by 31 U.S.C. § 3729 occurred in this district.

2. Venue is proper in this district under 31 U.S.C. § 3732(a) because the defendant can be found in this district and the acts complained of which are proscribed by 31 U.S.C. § 3729 occurred in this district.

II.

PARTIES

3. *Qui Tam* Plaintiff Christine Long is employed by the defendant as an accounting associate in the defendant's Research Accounting Department in Rochester, Minnesota.

4. Defendant Mayo Foundation ("Mayo") is a private "not-for-profit" organization based in Rochester, Minnesota. Mayo operates three medical clinics and four hospitals in Arizona, Minnesota, and Florida, in addition to the Mayo Health System which is comprised of a network of clinics and hospitals in southern Minnesota, northern Iowa and western Wisconsin. Mayo is a major recipient of medical research grants and contracts, the majority of which is comprised of grants received from the National Institutes of Health ("NIH"). Mayo also receives research funding through contracts with the Department of Defense and other federal agencies.

III.

CLAIM FOR VIOLATION OF THE

FALSE CLAIMS ACT, 31 U.S.C. §§ 3729(a)(1),(2) and (7)

5. As a major recipient of federal biomedical research grants, Mayo is obligated to control and account for all grant award authorizations, cash disbursements, expenditures and funds paid in advance by the Government. Pursuant to the "HHS Manual for Recipients Financed under the Payment Management System (PMS)," at a minimum Mayo's accounting system for grants was required to provide for the following:

A. Accurate, current and complete disclosure of the financial results of each program or project sponsored by awarding agencies.

B. Records that adequately identify the source and application of funds for sponsored activities. These records shall contain information on the awards, authorizations, obligations, unobligated balances, assets, expenditures, cash disbursements and income.

C. Effective control and accountability for all funds, property, and other assets. Recipients shall adequately safeguard all such assets and shall assure that they are used solely for authorized purposes.

D. Comparison of cash disbursements (or actual expenditures if on an accrual basis) with budgeted amounts for each grant or other agreement.

E. When advances are made by ACH, the recipient shall make drawdowns as close as possible to the time of disbursements. Normally federal funds are considered disbursed when checks have been released to pay for program and/or project costs. (No withdrawn cash can be applied toward any disbursement amount which exceeds the recipients project or program authorized amount.)

F. Procedures in accordance with the applicable cost principles and the terms of the award for determining the reasonability, allowability, and allocability of costs.

G. Accounting records that are supported by source documentation.

See also OMB Circular A-110 (revised), ¶21(b); 45 C.F.R. § 74.21(b).

6. For each grant awarded Mayo, Mayo indicated its acceptance of the award and its incorporated terms and conditions by drawing or requesting funds from the designated HHS payment system or office. Each NIH grant award incorporated by reference the terms and conditions set forth in the NIH Grant Policy Statement which in turn incorporated all applicable federal statutes, regulations and policies.

7. Mayo's entitlement to receive payments under its grants was, accordingly, conditioned on maintaining (1) written procedures that minimized the time elapsing between the transfer of funds and disbursements by the recipient; (2) a financial management system that met the above minimum accounting system requirements and which reflected accurate, current, and complete record keeping with respect to costs, and (3) adherence to mandatory cost principles for determining the reasonability, allowability, and allocability of costs applicable to each grant award.

8. Under cost principles applicable to Mayo's federal grants, a cost is considered reasonable if the nature of the goods or services acquired or applied, and the amount involved therefor reflect the action that a prudent person would have taken under the circumstances prevailing at the time the decision to incur the cost was made. One aspect of reasonableness is that the cost is of a type generally recognized as ordinary and necessary for the performance of the award. A cost is allocable if it is both reasonable for the performance of the award and allocable to the award. A cost is allocable if it is incurred specifically or solely to advance the work under the research agreement, or it benefits both the award and other work and can

be distributed in reasonable proportion to the benefits received, or it is necessary to the overall operation of the organization. In addition to maintaining accountability for all grands funds with effective controls in place, any costs allocable to a particular research agreement pursuant to the principles of reasonability, allowability and allocability may not be shifted to other research agreements or awards in order to overcome funding deficiencies caused by overruns or other funding considerations, or to avoid restrictions imposed by law or by the terms of the award, or for other reasons of convenience. See OMB Circular A-122 (Rev.) ("Cost Principles for Non-Profit Organizations") Attach.A., ¶¶2-4, 45 C.F.R. Part 74, App. E, Sec.iii, ¶¶ A-D.

9. The allegations against Mayo herein involve the mischarging of direct costs between numerous federally funded research grants between 1992 and the present and Mayo's failure to establish adequate control systems with respect to such direct costs as a material condition for receiving payments under its grants. Direct costs are those that can be identified specifically with a particular final cost objective, i.e., a particular award, grant or project. Costs identified specifically with awards are direct costs of the awards and are to be assigned directly thereto. Costs identified specifically with other final cost objectives of the organization are direct costs of those cost objectives and are not to be assigned to other awards directly or indirectly. Identifiable benefit to the research work rather than the nature of the goods and services involved is the determining factor in distinguishing direct from indirect costs of research agreements. Typical of transactions chargeable to a research agreement as direct costs are the compensation of employees for the time and effect devoted to

the performance of work under the research agreement, including related staff benefit and pension plan costs to the extent that such items are consistently accorded to all employees and treated by the recipient as direct rather than indirect costs, the costs of materials consumed or expended in the performance of such work, and other items of expense incurred for the research agreement, such as extraordinary utility consumption. The cost of materials supplied from stock or services rendered by specialized facilities or other institutional service operations may be included as direct costs of research agreements provided such items are consistently treated by the institution as direct rather than indirect costs and are charged under a recognized method of costing or pricing designed to recover only the actual direct and indirect costs of such material or service and conforming to generally accepted cost accounting practices consistently followed by the institution. See OMB Circular A-122, *supra*. at Attach. A, Sec. B; 45 C.F.R. 74, App. E, sec. IV.

10. In mischarging direct costs between research grants, Mayo appears to have been motivated, in part, by its desire to avoid refunding the federal government unused grant funds from underspent research projects, in addition to overcoming funding deficiencies caused by overruns on overspent research projects. Under federal guidelines, however, a grant recipient is required to promptly refund any balances of unobligated cash that the federal awarding agency has advanced or paid and that is not authorized to be retained by the recipient for use in other projects. See OMB Circular A-110 (Rev.) ¶71(d).

11. Mayo has routinely, knowingly and falsely mischarged direct costs between government funded research grants and grant projects by misallocating expenses, including salaries and benefits, supplies and services and even patient care costs to unrelated grant projects and cost objectives for which such mischarged costs provided no identifiable benefit. The misallocation of such expenses is a misrepresentation that such expenses were related to and benefitted the charged project and were allowable as to the mischarged grant project based on applicable cost principles. Mayo has routinely mischarged such direct costs from overspent and overrun grant projects by shifting or transferring such costs to grant projects that are either underspent or which have not yet exceeded budget. The shifting or transfer of such costs was mostly done retroactively and with no regard as to which grant project incurred the actual expense. To facilitate such mischarging, Mayo retroactively changed and altered previously certified effort and financial status reports. Additionally, Mayo has failed to maintain current, accurate, and complete accounting records relating to costs, it had no effective cost controls in place and no real accountability for each of its various federal grants, and its accounting records were not supported by source documentation.

12. Mayo predominantly mischarged direct costs from overspent grant projects to either underspent grant projects or grant projects which had not yet exceeded budget during the "year end push," which normally occurred at the end of each calendar year. For example, net Mayo expenses on overspent grant projects was projected at $3,000,000 for the end of calendar year 2001. Approximately

$1,500,000 was then mischarged through the use of retroactive expense transfers in November 2001 and another approximately $1,500,000 was again mischarged from overspent grants to underspend grants or grants which had not yet exceeded budget through the same mechanisms in December 2001 to eliminate the previously booked over expenditures. The majority of such retroactive transfers were to NIH grants. Mayo is believed to have conducted this same activity, the "year end push," consistently since 1992.

13. In mischarging and misallocating direct costs among various grants and by failing to maintain an adequate cost accounting system required as a condition of funding, Mayo has knowingly submitted false claims for payment to the United States and its agents and contractors in violation of the False Claims Act, 31 U.S.C., § 3729a(a). Further, Mayo has knowingly made, used or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States in violation of the False Claims Act, 31 U.S.C. § 3729a(2) and has knowingly made, used or caused to be made or used false records or statements to avoid, decrease or conceal its obligation to pay or transmit money to the United States in violation of the False Claims Act, 31 U.S.C. § 3729a(7).

14. Mayo implicitly misrepresented compliance with the terms and conditions of the grant awards, and did so knowingly, each time it periodically drew federal grant funds, and Mayo expressly misrepresented compliance with the terms and conditions of the grant awards, and did so knowingly, when it submitted certified periodic financial status reports to the NIH. A recent sampling of 100 cost transfers between

grants during the period of 1992 to the present revealed that nearly half of the transfers were either untimely, inadequately documented and/or misallocated.

## IV.

## PRAYER

WHEREFORE, *Qui Tam* Plaintiff Christine Long prays as follows:

A. For treble damages and civil penalties up to the maximum permitted by law, for the maximum *qui tam* percentage share allowed pursuant to 31 U.S.C. 3730(d) and for attorney's fees, costs and reasonable expenses;

B. For any and all other relief to which the plaintiffs may be entitled.

## V.

## JURY DEMAND

Plaintiffs request a trial by jury of all issues so triable.

Dated: 04.20.05

Respectfully submitted,

**Gary A. Weissman, Esq., (I.D. # 115599)**
**Weissman Law Office**
**701 Fourth Avenue South, #300**
**Minneapolis, MN 55415**
**Telephone: 612.370.1110**
**Fax: 612.333.9220**

**Phillip E. Benson, Esq., (CA Bar # 97420)**
**Warren Benson Law Group**
**8141 East Kaiser Blvd., #203**
**Anaheim Hills, CA 92808.2241**
**Telephone: 714.637.5537**
**Fax: 714.637.5931**

**Donald R. Warren, Esq., (CA Bar # 138933)**
**Warren Benson Law Group**
**110 Juniper Street**
**San Diego, CA 92101**
**Telephone: 619.325.6788, ext. 102**
**Fax: 619.325.6789**

**Attorneys for *Qui Tam* Plaintiff, Christine Long**